IN THE CIRCUIT COURT OF SEBASTIAN COUNTY, ARKANSAS
FORT SMITH DIVISION

COOPER CLINIC, P.A.                                                    **PLAINTIFF**

     V.                    **NO. CV 2013-766 (I)**

**JENNIFER ELAINE BURKS, M.D.;**
**ROBERT L. NOWLIN, M.D.;**
**DONALD SHOWS, M.D.;**
**JOHN WERNER, DPM;**
**WILLIAM A. KNUBLEY, M.D.;**
**MERCY CLINIC FORT SMITH**
**COMMUNITIES; MERCY**
**HEALTH FORT SMITH**
**COMMUNITIES; SISTERS OF**
**MERCY HEALTH SYSTEM,**
**ST. LOUIS n/k/a MERCY HEALTH**                          **DEFENDANTS**

### THIRD AMENDED COMPLAINT

     Comes now the Plaintiff, Cooper Clinic, P.A. ("Cooper") and for its Complaint, states as follows:

     1.    Plaintiff, Cooper Clinic, P.A., is a corporation duly organized and existing under the laws of the State of Arkansas, with its principal place of business in Fort Smith, Arkansas.

     2.    Jennifer Elaine Burks, M.D. is a physician practicing in Fort Smith, Arkansas, formerly associated with Cooper Clinic, P.A., and a resident of the Fort Smith Division, Sebastian County, Arkansas.

EXHIBIT

B

3.     Robert L. Nowlin, M.D. is a physician who formerly practiced at Cooper Clinic, P.A., is a resident of the State of Oklahoma who entered into contracts with Cooper Clinic, P.A. and practiced medicine in Fort Smith, Arkansas, and is subject to the jurisdiction of this Court.

4.     Donald Shows, M.D. is a physician practicing in Fort Smith, Arkansas, who is a resident of the Fort Smith District of Sebastian County, Arkansas.

5.     John Werner, DPM, is a podiatrist practicing in Fort Smith, Arkansas, formerly associated with Cooper Clinic, P.A., and who is a resident of the Fort Smith District of Sebastian County, Arkansas.

6.     William A. Knubley, M.D. is a neurologist practicing in Fort Smith, Arkansas, formerly associated with Cooper Clinic, P.A., and who is a resident of the Fort Smith District of Sebastian County, Arkansas.

7.     The Defendant, Mercy Clinic Fort Smith Communities, is a domestic nonprofit corporation in the State of Arkansas (Filing #800120336), whose registered agent for service is Greta Wilcher, 7301 Rogers Avenue, Fort Smith, Arkansas 72903.

8.     The Defendant, Mercy Health Fort Smith Communities, is a domestic nonprofit corporation organized and existing under the laws of the State of Arkansas (Filing #800120331), whose registered agent for service is Greta Wilcher, 7301 Rogers Avenue, Fort Smith, Arkansas 72903.

9.     The Defendant, Sisters of Mercy Health System, St. Louis, also known as Mercy Health, is a foreign nonprofit corporation organized and existing under the laws of the State of Missouri doing business in the State of Arkansas whose registered agent for service is Jacqueline Richman, Suite 100, 14528 S. Outer 40, Chesterfield, Missouri 63017.

2

10.     This Court has jurisdiction over the parties and subject matter and venue is proper.

11.     Cooper owns and operates a clinic located in Fort Smith, Arkansas, adjacent to the campus of Mercy Hospital Fort Smith and a number of additional clinics in Fort Smith and within a 45 mile radius of Fort Smith. A number of the physicians employed by Cooper have staff privileges at Mercy Hospital Fort Smith.

12.     Cooper is a multi-specialty clinic. Its physicians are employed pursuant to contractual agreements setting forth the obligations of the physician and the clinic, respectively. Mercy Clinic Fort Smith Communities; Mercy Health Fort Smith Communities; and Sisters of Mercy Health System, St. Louis (now "Mercy Health") (collectively "Mercy Entities") have at all times herein been aware of the fact that Cooper physicians were under contracts of employment.

13.     Defendant, Jennifer Elaine Burks, M.D. ("Dr. Burks"), is a physician, formerly employed pursuant to contract by Cooper providing family practice services, who is now employed by Defendants, Mercy Entities. Dr. Burks resigned from Cooper effective July 7, 2013 on June 7, 2013 by letter of the same date, a copy of which is attached hereto and identified as Exhibit A.

14.     On the 14th day of November, 2000, Cooper and Dr. Burks entered into an employment agreement, a copy of which is attached hereto as Exhibit B and incorporated herein by reference. On September 11, 2003, Cooper and Dr. Burks entered into a contract of employment which is attached hereto as Exhibit C and incorporated herein by reference. On September 11, 2003, Cooper and Dr. Burks entered into a supplemental contract of employment which is attached hereto as Exhibit D and incorporated herein by reference. On the 30th day of

3

December, 2008, Cooper and Dr. Burks entered into an amendment to the supplemental contract of employment, a copy of which is attached hereto as Exhibit E and incorporated herein by reference. On the 20th day of October, 2011, Cooper and Dr. Burks entered into a second amendment to the supplemental contract of employment, a copy of which is attached hereto as Exhibit F and incorporated herein by reference.

15. At the time the second amendment to the supplemental contract of employment (Exhibit F) was entered into on October 20, 2011, Cooper had determined that Mercy Entities were attempting to recruit Cooper physicians who were under contract; that said recruitment of Cooper's physicians created problems with serving patients in primary care, specialties and subspecialties and caused harm to Cooper's financial condition. Cooper recognized that the existing employment between Dr. Burks and Cooper allowed for a thirty day notice of termination from employment which could cause substantial harm to Cooper in that thirty days is an insufficient amount of time to hire a replacement physician.

16. In paragraph 2 of the second amendment to the supplemental employment agreement, Dr. Burks agreed not to terminate her employment with Cooper prior to October 1, 2014, in order to accept employment with Mercy Clinic or any organization owned, controlled or affiliated with St. Edward Mercy Medical Center or Mercy Clinic.

17. Dr. Burks has breached the terms of the second amendment to the supplemental contract of employment (Exhibit F) by terminating said contract by resigning prior to October 14, 2014 in order to join Mercy Entities and Cooper is therefore entitled to recover from Dr. Burks all damages suffered by Cooper as well as all remedies available either at law or in equity.

18. Defendant, Robert L. Nowlin, M.D. ("Dr. Nowlin"), is a physician, formerly employed pursuant to contract by Cooper, providing services as a primary care physician in

4

internal medicine who is now employed by Defendant, Mercy Clinic. Dr. Nowlin resigned from Cooper effective August 1, 2013 on April 23, 2013 by letter of the same date, a copy of which is attached hereto and identified as Exhibit G and incorporated herein by reference.

19.    On the 10th day of September, 2008, Cooper and Dr. Nowlin entered into an employment contract, a copy of which is attached hereto and identified as Exhibit H and incorporated herein by reference. On December 9, 2010, Cooper and Dr. Nowlin entered into a contract of employment, a copy of which is attached hereto as Exhibit I and incorporated herein by reference. On the 1st day of December, 2011, Cooper and Dr. Nowlin entered into a second amendment to the supplemental contract of employment, a copy of which is attached hereto as Exhibit J and incorporated herein by reference.

20.    At the time the second amendment to the supplemental contract of employment (Exhibit J) was entered into with Cooper, Cooper had determined that Mercy Entities were attempting to recruit Cooper physicians who were under contract; that said recruitment of Cooper's physicians created problems with serving patients in some primary care, specialties and subspecialties and caused harm to Cooper's financial condition. Cooper recognized that the existing employment between Dr. Nowlin and Cooper allowed for a thirty day notice of termination from employment which could cause substantial harm to Cooper in that thirty days is an insufficient amount of time to hire a replacement internal medicine physician.

21.    In paragraph 2 of the second amendment to the supplemental employment agreement, Dr. Nowlin agreed not to terminate his employment with Cooper prior to October 1, 2014, in order to accept employment with Mercy Clinic or any organization owned, controlled or affiliated with St. Edward Mercy Medical Center or Mercy Clinic.

22. Dr. Nowlin has breached the terms of the supplemental contract of employment (Exhibit J) by terminating said contract by resigning prior to October 14, 2014 in order to join Mercy Entities and Cooper is therefore entitled to recover from Dr. Nowlin all damages suffered by Cooper as well as all remedies available either at law or in equity.

23. Defendant, Donald Shows, M.D. ("Dr. Shows"), is a physician formerly employed pursuant to contract by Cooper, providing cardiology services and who is now employed by Defendant Mercy Clinic. Dr. Shows resigned from Cooper effective December 20, 2012 on the 15th day of November, 2012 by letter of the same date, a copy of which is attached hereto and identified as Exhibit K and incorporated herein by reference.

24. On the 19th day of January, 2001, Cooper and Dr. Shows entered into an employment agreement, a copy of which is attached hereto and identified as Exhibit L and incorporated herein by reference. On the 22nd day of July, 2003, Cooper and Dr. Shows entered into a second contract of employment, a copy of which is attached hereto as Exhibit M and incorporated herein by reference. On the 22nd day of July, 2003, Cooper and Dr. Shows entered into a supplemental contract of employment, a copy of which is attached hereto as Exhibit N and incorporated herein by reference. On the 30th day of December, 2008, Cooper and Dr. Shows entered into an amendment to the supplemental contract of employment, a copy of which is attached hereto and identified as Exhibit O and incorporated herein by reference. On the 4th day of November, 2011, Cooper and Dr. Shows entered into a second amendment to the supplemental contract of employment a copy of which is attached hereto and identified as Exhibit P and incorporated herein by reference.

25. At the time second amendment to the supplemental contract of employment (Exhibit P) was entered into, Cooper had determined that Mercy Entities were attempting to

6

recruit Cooper physicians under contract; that said recruitment of Cooper's physicians created problems with serving patients in primary care, specialties and subspecialties and caused harm to Cooper's financial condition. The second amendment to the supplemental contract of employment recognized that the existing employment contract between Dr. Shows and Cooper allowed for a thirty day notice of termination from employment which could cause substantial harm to Cooper in that thirty days is an insufficient amount of time to hire a replacement cardiologist.

26.     In paragraph 2 of the second amendment to the supplemental employment agreement, Dr. Shows agreed not to terminate his employment with Cooper prior to October 1, 2014, in order to accept employment with Mercy Clinic or any organization owned, controlled or affiliated with St. Edward Mercy Medical Center or Mercy Clinic.

27.     Dr. Shows has breached the terms of the second amendment to the supplemental contract of employment (Exhibit P) by terminating said contract by resigning prior to October 14, 2014 in order to join Mercy Entities and Cooper is therefore entitled to recover from Dr. Shows all damages suffered by Cooper as well as all remedies available either at law or in equity.

28.     Defendant, John Werner, DPM ("Dr. Werner"), is a podiatrist, formerly employed pursuant to contract by Cooper providing medical services, who is now employed by Defendants, Mercy Entities. Dr. Werner resigned from Cooper effective August 1, 2013, on July 23, 2013 by letter of the same date, a copy of which is attached hereto and identified as Exhibit Q.

29.     On the 15th day of April, 1999, Cooper and Dr. Werner entered into an employment agreement, a copy of which is attached hereto as Exhibit R and incorporated herein

7

by reference.    On October 9, 2006, Cooper and Dr. Werner entered into a contract of employment which is attached hereto as Exhibit S and incorporated herein by reference.    On October 9, 2006, Cooper and Dr. Werner entered into a supplemental contract of employment which is attached hereto as Exhibit T and incorporated herein by reference.    On the 30th day of December, 2008, Cooper and Dr. Werner entered into an amendment to the supplemental contract of employment, a copy of which is attached hereto as Exhibit U and incorporated herein by reference.    On the 1st day of December, 2011, Cooper and Dr. Werner entered into a second amendment to the supplemental contract of employment, a copy of which is attached hereto as Exhibit V and incorporated herein by reference.

30.    At the time the second amendment to the supplemental contract of employment (Exhibit V) was entered into, Cooper had determined that Mercy Entities were attempting to recruit Cooper physicians who were under contract; that said recruitment of Cooper's physicians created problems with serving patients in primary care, specialties and subspecialties and caused harm to Cooper's financial condition.    The second amendment to the supplemental contract of employment recognized that the existing employment contract between Dr. Werner and Cooper allowed for a thirty day notice of termination from employment which could cause substantial harm to Cooper in that thirty days is an insufficient amount of time to hire a replacement cardiologist.

31.    In paragraph 2 of the second amendment to the supplemental employment agreement, Dr. Werner agreed not to terminate his employment with Cooper prior to October 1, 2014, in order to accept employment with Mercy Clinic or any organization owned, controlled or affiliated with St. Edward Mercy Medical Center or Mercy Clinic.

8

32.     Dr. Werner has breached the terms of the contract of employment and the second amendment to the supplemental contract of employment by terminating said contract on less than 30 days notice and by resigning prior to October 14, 2014 in order to join Mercy Entities and Cooper is therefore entitled to recover from Dr. Werner all damages suffered by Cooper as well as all remedies available either at law or in equity.

33.     Defendant, William A. Knubley, M.D. ("Dr. Knubley"), is a neurologist, formerly employed pursuant to contract by Cooper providing medical services, who is now employed by Defendants, Mercy Entities. Dr. Knubley resigned from Cooper effective November 30, 2013 on November 4, 2013 by letter, a copy of which is attached hereto and identified as Exhibit DD.

34.     On the 1st day of April, 1988, Cooper and Dr. Knubley entered into an employment contract, a copy of which is attached hereto as Exhibit EE and incorporated herein by reference. An undated agreement entitled Supplemental Contract of Employment was entered into in 1989 between Cooper and Dr. Knubley which is attached hereto as Exhibit FF and incorporated herein by reference. By undated agreement entitled Addendum to Supplemental Contract of Employment, Cooper and Dr. Knubley entered into said agreement which is attached hereto as Exhibit GG and incorporated herein by reference. On the 30th day of December, 2008, Cooper and Dr. Knubley entered into an amendment to the supplemental contract of employment, a copy of which is attached hereto as Exhibit HH and incorporated herein by reference. On the 1st day of December, 2011, Cooper and Dr. Knubley entered into an amendment to the supplemental contract of employment, a copy of which is attached hereto as Exhibit II and incorporated herein by reference.

35.     At the time the amendment to the supplemental contract of employment (Exhibit II) was entered into, Cooper had determined that Mercy Entities were attempting to recruit

9

Cooper physicians who were under contract; that said recruitment of Cooper's physicians created problems with serving patients in primary care, specialties and subspecialties and caused harm to Cooper's financial condition. The amendment to the supplemental contract of employment recognized that the existing employment contract between Dr. Knubley and Cooper allowed for a thirty day notice of termination from employment which could cause substantial harm to Cooper in that thirty days is an insufficient amount of time to hire a replacement neurologist.

36.     In paragraph 2 of the amendment to the supplemental contract of employment, Dr. Knubley agreed not to terminate his employment with Cooper prior to October 1, 2014, in order to accept employment with Mercy Clinic or any organization owned, controlled or affiliated with St. Edward Mercy Medical Center or Mercy Clinic.

37.     Dr. Knubley has breached the terms of the contract of employment and the amendment to the supplemental contract of employment by terminating said contract on less than 30 days notice and by resigning prior to October 14, 2014 in order to join Mercy Entities and Cooper is therefore entitled to recover from Dr. Knubley all damages suffered by Cooper as well as all remedies available either at law or in equity.

38.     Drs. Shows, Nowlin, Burks, Werner, and Knubley all left Cooper to become employees of the Mercy Entities.

39.     Mercy Entities operate a multi-specialty clinic on the campus of Mercy Hospital Fort Smith adjacent to Cooper. Mercy Clinic employs approximately 90 specialty and primary care physicians.

40.     Upon information and belief, for some time Mercy Entities have been actively attempting to hire physicians from Cooper Clinic to work at Mercy Clinic. Several Cooper Clinic physicians have been solicited by representatives of Mercy Entities. Since October 31,

2010, the following physicians have left their employment at Cooper and continued their primary care or specialty practice at Mercy Entities as employees of said entities: Ivelesse DuPree, M.D. (left October 31, 2010); Merle McClain, M.D. (left November 19, 2010); Tony Flippin, M.D. (left January 3, 2011); Douglas Buckley, M.D. (left April 13, 2012); John Smith, M.D. (left September 30, 2011); Garreth Carrick, M.D. (left September 30, 2011); Lane Wilson, M.D. (left September 30, 2011); David Hunton, M.D. (left September 30, 2012); Kurt Mehl, M.D. (left September 30, 2012); Defendant Donald Shows, M.D. (left December 20, 2012); Chris Coleman, M.D. (left effective April 1, 2013); Greg Pineau, M.D. (left January 31, 2013); Defendant Robert Nowlin, M.D. (left June 30, 2013); Defendant Jennifer Elaine Burks, M.D. (left July 7, 2013); Defendant John Werner, DPM (left August 1, 2013); and Defendant William A. Knubley, M.D. (effective November 30, 2013).

41.    Some or all of the above physicians were contacted prior to the expiration of their contracts with Cooper and actively recruited to come to work for Mercy Entities, with some even entering into contracts with Mercy Entities prior to leaving Cooper, notwithstanding the existing contractual obligations between Cooper and said physicians which were known to the Mercy Entities.

42.    Numerous marketing efforts have been undertaken by Mercy Entities to publicize the employment of the former Cooper specialty physicians. With regard to Defendant, Dr. Shows, a copy of a print advertisement is attached hereto and identified as Exhibit W. With regard to Defendant Dr. Burks, a copy of a print advertisement is attached hereto and identified as Exhibit X. With regard to Defendant, Dr. Nowlin, a copy of a print advertisement is attached hereto and identified as Exhibit Y. With regard to Defendant, Dr. Knubley, a copy of a print advertisement is attached hereto and identified as Exhibit JJ.

11

43.     Beginning on or about December 8, 2010, Cooper had communications with representatives of Mercy Entities regarding efforts to recruit physicians under contract with Cooper by Mercy Entities. On December 8, 2010, Cooper contacted Jeff Johnston, then the CEO of St. Edward Mercy Medical Center in Fort Smith (now Mercy Hospital) advising of offers that had been made and accepted to two Cooper physicians and were being extended to a third physician and asking that Mercy Entities not contact Cooper physicians presently under contract. *See* attached Exhibit Z. On January 21, 2011, a second communication with Jeff Johnston occurred regarding additional solicitation of physicians under contract and again specifically requesting that Mercy Entities refrain from attempts to intentionally inflict economic damage on Cooper Clinic's business and interfere with contractual relationships with its physicians. *See* Exhibit AA.     In a July 25, 2012 document (Exhibit BB), Mercy Entities acknowledged contacting members of the Cardiology Department of Cooper and another physician to fill the position of Chief Medical Officer with Mercy Entities. On July 30, 2012, representatives of Mercy Entities hand delivered a letter agreement to the President and CEO of Cooper in which Mercy Entities asked Cooper to enter into exclusive negotiations to sell its business to Mercy Entities. In its July 30, 2012, letter to Mercy Entities, Cooper again advised Mercy Entities in view of the statements contained in the proposed agreement, and obvious solicitation of Cooper physicians under contract, that Mercy Entities were attempting to economically harm Cooper and punish it for not selling its business to Mercy Entities. *See* Exhibit CC. Mercy Entities knew at the time it entered into contracts with Dr. Burks, Dr. Nowlin, Dr. Show, Dr. Werner, Dr. Knubley, and other physicians, that Cooper had a contractual relationship with these physicians in the Fort Smith community.

44.     Mercy Entities also knew that Cooper had expended considerable amounts of resources in recruiting these physicians to Fort Smith, Arkansas, and assisting them to establish their practice in Fort Smith, Arkansas. By hiring these physicians and causing them to breach their contractual relationships with Cooper, Mercy Entities realized that they could avoid spending the resources (i.e. time and money) they would otherwise have incurred in recruiting and hiring said primary care and specialty physicians and cause economic harm to Cooper.

45.     Mercy Entities considered Cooper to be their competitor in operating a multi-specialty clinic. Therefore, Mercy Entities sought to raid the successful multi-specialty clinic at Cooper in a systematic and improper manner.

46.     Mercy Entities recruited the physicians of Cooper by offering excessive compensation, medical director agreements, signing bonuses and other payments for the purpose of receiving physician referrals of patients to the Mercy Entities which are a violation of the provisions of Stark, 42 U.S.C. 1395nn, and the Anti-Kickback Statute, 42 U.S.C. 1320a-7b. The actions of Mercy constitute violations of said statutes and said violations do not qualify for any of the "safe harbors" or exemptions within said statutory provisions. The transactions entered into between the Mercy Entities and the named Defendant physicians herein constitute violations of the above statutes for which each may be held liable. These violations of law occurred with knowledge on the part of the Mercy Entities and the named physician Defendants that such conduct was unlawful.

## COUNT I – BREACH OF CONTRACT

47.     Cooper incorporates the allegations set forth in the preceding paragraphs as if set forth herein word for word.

13

48.     As is set forth herein, Drs. Burks, Nowlin, Shows, Werner, and Knubley breached the terms of the various employment contracts that each of them agreed to.

49.     Among other things, Drs. Burks, Nowlin, Shows, Werner, and Knubley did not remain with Cooper Clinic until October 1, 2014, as they agreed to do in their respective second amendment to the supplemental contracts of employment into which they entered.

50.     As a result of Drs. Burks, Nowlin, Shows, Werner, and Knubley's breach of their respective employment and supplemental employment agreements, Cooper has suffered damages. Cooper is entitled to recover from Drs. Burks, Nowlin, Shows, Werner and Knubley all damages suffered by Cooper that result from or arise out of this breach.

51.     Mercy recruited and hired Drs. Burks, Nowlin, Shows, Werner, Knubley, DuPree, McClain, Flippin, Buckley, Smith, Carrick, Wilson, Hunton, Mehl and Coleman by offering and paying excessive compensation for the purpose of retaining and receiving new referrals which is a violation of the provisions of Stark, 42 U.S.C. 1395nn, and the Anti-Kickback Statute, 42 U.S.C. 1320a-7b. It is a violation of said statutes for the Mercy Entities to offer said excessive compensation and the physicians to accept said excessive compensation. Said actions on the part of the Mercy Entities and the Defendant physicians constitute intentional and improper interference with the contractual relationships and business expectancies of Cooper.

52.     Cooper has been damaged in an amount that exceeds the amount necessary for federal court jurisdiction and diversity of citizenship cases.

53.     In addition, Cooper is entitled to recover all attorney's fees and costs incurred as a result of Drs. Burks, Nowlin, Shows, Werner, and Knubley's breach of the employment and supplemental employment agreements.

14

## COUNT II – TORTIOUS INTERFERENCE WITH
## CONTRACTUAL RELATIONSHIPS AND BUSINESS EXPECTANCIES

54.     Cooper incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein word for word.

55.     As set forth herein, there existed valid contractual relationships and business expectancies between Cooper and Drs. Burks, Nowlin, Shows, Werner, Knubley and other physicians.

56.     Mercy Entities had knowledge of these contractual relationships and business expectancies.

57.     Mercy Entities recruited the physicians of Cooper by offering excessive compensation, medical director agreements, signing bonuses and other payments for the purpose of receiving physician referrals of patients to the Mercy Entities which are a violation of the provisions of Stark, 42 U.S.C. 1395nn, and the Anti-Kickback Statute, 42 U.S.C. 1320a-7b. It is a violation of said statutes for the Mercy Entities to offer said excessive compensation and the physicians to accept said excessive compensation.  Said actions on the part of the Defendants constitute improper business practices.

58.     Mercy Entities intentionally and improperly interfered with these contractual relationships and business expectancies, which induced or caused Drs. Burks, Nowlin, Shows, Werner, Knubley and other physicians to breach or terminate said contractual relationships. As a proximate cause of Mercy Entities' conduct, Cooper has suffered damages including but not limited to lost collections, loss of cash flow and net income, loss of professional and ancillary fees, unplanned payout of cash for accounts receivable, and inability of Cooper to recruit to replace the departing physicians in their specialties in an amount that exceeds the amount necessary for federal court jurisdiction and diversity of citizenship cases.

## COUNT III – VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT

59.     Cooper incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein word for word.

60.     As set forth herein, Mercy Entities have knowingly contacted and/or negotiated with Cooper physicians who were under contracts restricting said physicians' ability to terminate their employment contract and go to work for Mercy.    Said restrictions were based upon consideration, and such practices constitute unconscionable business practices in accordance with the Arkansas Deceptive Trade Practices Act.  Mercy Entities systematically and repeatedly have hired physicians under contract from Cooper, inducing them to breach their contracts with Cooper by paying compensation in excess of any reasonable rate based on said doctors' productivity, offering signing bonuses to entice said physicians to break their contracts with Cooper, and all of this is in the face of repeated requests from representatives of Cooper that Mercy Entities cease and desist such improper unconscionable, false and deceptive acts or practices in business.

61.     Further, on July 25, 2012, Mercy Entities hand delivered a letter agreement to both the President and CEO of Cooper (Exhibit BB) in which they represented they would not negotiate with Cooper physicians for Mercy employment (with the exception of Cooper cardiologists and for a Chief Medical Officer) if Cooper would sign the letter agreement by Monday, July 30, 2012, enter into exclusive negotiations with Mercy to sell its business to Mercy, and stand still on any discussions with Sparks, HMA, equity investors or any other party involving a "Competing Transaction."  When Cooper refused to sign the agreement proposed by Mercy Entities, Mercy Entities immediately and vigorously began to solicit numerous Cooper

16

physicians under employment contract in an effort to acquire those practices to the detriment of Cooper.

62.     Mercy Entities recruited the physicians of Cooper by offering excessive compensation, medical director agreements, signing bonuses and other payments for the purpose of receiving physician referrals of patients to the Mercy Entities which are a violation of the provisions of Stark, 42 U.S.C. 1395nn, and the Anti-Kickback Statute, 42 U.S.C. 1320a-7b. It is a violation of said statutes for the Mercy Entities to offer said excessive compensation and the physicians to accept said excessive compensation. Said actions on the part of the Defendants constitute unconscionable business practices.

63.     Such conduct is unlawful under the Arkansas Deceptive Trade Practices Act.

64.     As a direct and proximate result of Mercy Entities' conduct, Cooper has suffered damage including but not limited to lost collections, loss of cash flow and net income, loss of professional and ancillary fees, unplanned payout of cash for accounts receivable, and inability of Cooper to recruit to replace the departing physicians in their specialties in an amount that exceeds the amount necessary for federal court jurisdiction and diversity of citizenship cases.

65.     Furthermore, attorneys' fees and punitive damages should be awarded against Mercy Entities in order to punish them for their deceptive and unconscionable conduct and to deter them and others from engaging in such conduct at this time.

## COUNT IV – UNJUST ENRICHMENT

66.     Cooper incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein word for word.

67.     Cooper expended valuable resources to develop a substantial multi-specialty clinic to benefit the community of Fort Smith, Arkansas, which involved recruiting, assisting and

developing the multi-specialty practices of physicians like Drs. Burks, Nowlin, Shows, Werner, Knubley and others listed herein who have left the clinic and now work at Mercy Entities.

68.     Mercy Entities have improperly caused the Defendant physicians to break their agreements with Cooper, knowing that said physicians were subject to employment contracts, causing damages including but not limited to lost collections, loss of cash flow and net income, loss of professional and ancillary fees, unplanned payouts of cash for accounts receivable, and the inability of Cooper to replace the departing physicians in their specialties. Representatives of Mercy Entities were told, prior to May of 2012, that they should not attempt to recruit Cooper's physicians who were under contract (Exhibits AA and Z).

69.     On July 30, 2012 Cooper again asked Mercy not to recruit Cooper physicians who were under contract (Exhibit CC).

70.     On July 25, 2012 Mercy Entities, in an effort to get Cooper to agree to pursue exclusive discussions to sell its business to Mercy Entities in order that Cooper's physicians would become employed by Mercy Entities, advised that they would not have integration or employment discussions with any Cooper physician or co-worker, other than its negotiations for a Chief Medical Officer and with Cooper cardiologists, provided that Cooper sign the July 25, 2012 letter of agreement by 5:00 PM on Monday, July 30, 2012. (Exhibit BB).

71.     In the July 25, 2012 letter, Mercy Entities advised that they would not proceed with solicitations of Cooper physicians through September 30, 2012 provided that Cooper and Mercy Entities had entered into a mutually acceptable confidentiality agreement (for a sale of Cooper to Mercy Entities) by that date. When Cooper refused to sign the July 25, 2012 letter agreement by the 5:00 PM, Monday, July 30, 2012 deadline, Mercy Entities responded by completing negotiations to hire David Hunton, M.D. as Chief Medical Officer (resigned

18

September 30, 2012), Cardiologist Kurt Mehl (resigned September 30, 2012), Cardiologist Donald Shows (resigned December 30, 2012) and immediately and vigorously began to solicit numerous other Cooper physicians under employment contracts in an effort to acquire the practices of those physicians to the detriment of Cooper. These actions were part of an effort by Defendants to unfairly further their pecuniary ambitions to the detriment of Cooper.

72.     Mercy Entities recruited the physicians of Cooper by offering excessive compensation, medical director agreements, signing bonuses and other payments for the purpose of receiving physician referrals of patients to the Mercy Entities which are a violation of the provisions of Stark, 42 U.S.C. 1395nn, and the Anti-Kickback Statute, 42 U.S.C. 1320a-7b. It is a violation of said statutes for the Mercy Entities to offer said excessive compensation and the physicians to accept said excessive compensation. Said actions on the part of the Defendants represent an effort on the part of Defendants to unfairly further their pecuniary ambitions to the detriment of Cooper.

73.     Equity and good conscience demand that Mercy Entities not gain from such improper conduct.

74.     Therefore, Mercy Entities should be required to disgorge all benefits they have received and may receive hereafter from engaging in said conduct.

75.     Cooper is entitled to a judgment against Mercy Entities for the total amount of such benefits, which include, but are not limited to, all amounts expended by Cooper in recruiting, assisting and developing the multi-specialty medical practice of Drs. Burks, Nowlin, Shows, Werner, and Knubley and to the extent it can be proven, other physicians named herein.

19

## COUNT V – CIVIL CONSPIRACY

76.     Cooper incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein word for word.

77.     Under Arkansas law, one or more parties may be held responsible for the conduct of another party if they engaged in a civil conspiracy.  Civil conspiracy may be established by the conduct of two or more parties to accomplish a purpose that is unlawful, immoral, unethical or oppressive, or to accomplish some purpose, not in itself unlawful, oppressive, unethical or immoral, but by unlawful, oppressive or immoral means.

78.     As set forth herein, Mercy Entities engaged in a civil conspiracy to induce Cooper physicians to break their employment agreements with Cooper and accept employment with the Mercy Entities, cause a disruption to Cooper's contractual and business relationships, and cause economic harm to Cooper through loss of professional and ancillary collections, unplanned payouts of cash for accounts receivable, reduced cash flow and income and inability to replace the recruited Cooper physicians in their specialties.  Exhibit BB attached hereto is a letter dated July 25, 2012 addressed to both the President and CEO of Cooper from Kim Day, President Mercy Central Communities, Ryan Gehrig, President, Mercy Hospital Fort Smith, and Cole Goodman, President, Mercy Clinic Fort Smith.  In that letter, Mercy Entities acknowledged being in discussions and negotiations with Cooper cardiologists and a Cooper physician to become Mercy's Chief Medical Officer.  The members of Cooper cardiology, which then included the Defendant Dr. Shows, were under employment contracts with Cooper as was the Cooper physician who was being solicited by Mercy Entities for the Chief Medical Officer position.  In signing the letter, the three entities admit pursuing Cooper physicians under

employment contracts as of July 25, 2012. Mercy Entities subsequently continued to recruit Cooper physicians, despite Cooper's repeated written protests (Exhibits AA, CC and Z).

79.     The July 25, 2012 letter also states that Mercy Entities would not have integration or employment discussions with any other Cooper physician or co-worker through September 30, 2012 but that such commitment would terminate unless Cooper and Mercy entered into a mutually acceptable confidentiality agreement to pursue the integration of Cooper and its physicians with Mercy Entities.

80.     After Cooper refused to sign the proposed letter agreement, Mercy Entities responded by completing negotiations with David Hunton, M.D. to become Mercy's Chief Medical Officer (resigned September 30, 2012), Kurt Mehl, M.D. and cardiologist (resigned September 30, 20120, Defendant Donald Shows, M.D. and cardiologist (resigned December 30, 2012) and six other Cooper physicians in 2013. Mercy Entities immediately and vigorously began to solicit numerous other Cooper physicians under employment contracts in an effort to acquire the practices of those physicians to the detriment of Cooper. The three Mercy Entities all admitted pursuing Cooper employees under contract as of July 25, 2012, and refused to discontinue such actions.

81.     The actions set forth in the preceding paragraph represent an attempt by the Defendants, at least three of them, to accomplish immoral, unethical and/or oppressive purposes and that they have used immoral, unethical or oppressive means.

82.     Mercy Entities recruited the physicians of Cooper by offering excessive compensation, medical director agreements, signing bonuses and other payments for the purpose of receiving physician referrals of patients to the Mercy Entities which are a violation of the provisions of Stark, 42 U.S.C. 1395nn, and the Anti-Kickback Statute, 42 U.S.C. 1320a-7b. It is

21

a violation of said statutes for the Mercy Entities to offer said excessive compensation and the physicians to accept said excessive compensation. Said actions on the part of the Defendants represent an effort on the part of Defendants to unfairly further their pecuniary ambitions to the detriment of Cooper. Said actions on the part of Defendants represent immoral, unethical and/or oppressive means to accomplish immoral, unethical and/or oppressive purposes.

83.     Consequently, Defendants should be held liable for all damages incurred by Plaintiff, as the same are set forth herein.

84.     As a direct and proximate result of Defendants' conduct, Cooper has suffered damage including but not limited to lost collections, loss of cash flow and net income, loss of professional and ancillary fees, unplanned payout of cash for accounts receivable, and inability of Cooper to recruit to replace the departing physicians in their specialties in an amount that exceeds the amount necessary for federal court jurisdiction and diversity of citizenship cases.

85.     Furthermore, punitive damages should be awarded against Mercy Entities in order to punish them for their intentional, improper and malicious conduct and to deter them and others from engaging in a similar conduct.

## COUNT VI – BREACH OF CONTRACT – COMPENSATION REIMBURSEMENT

86.     Cooper incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein word for word.

87.     Under the terms of the contract of employment, Dr. Werner was to receive annual compensation based on his production under Cooper's compensation program and policies.

88.     In recent years, Dr. Werner has received a monthly base salary as a draw against his annual compensation.

89.     Dr. Werner has received compensation payments of $42,564.75 over what he has actually earned.

90.     Dr. Werner is liable to Cooper for this overpayment and should be held to reimburse Cooper for this amount.

91.     Cooper requests a trial by jury.

WHEREFORE, Plaintiff, Cooper Clinic, P.A., prays that it be awarded judgment in its favor and against the Defendants, Jennifer Elaine Burks, M.D., Robert L. Nowlin, M.D., Donald Shows, M.D., John Werner, DPM, William A. Knubley, M.D., and the Mercy Entities as follows:

(a)     For an award of compensatory damages against the Defendants in an amount that exceeds the amount necessary for federal court jurisdiction and diversity of citizenship cases in an amount to be established at trial;

(b)     For an award of punitive damages against Mercy Entities in an amount sufficient to render the consequences of Mercy Entities' conduct an example to themselves and to others in an amount to be established at trial;

(c)     For an award of all costs in bringing and prosecuting this action, including an award of attorney's fees where appropriate;

(d)     For damages in the sum of $42,564.35 against Defendant, John Werner, DPM, for breach of contract/compensation reimbursement; and

(e)     For any and all other relief to which Cooper may be entitled or which this Court may deem proper.

23

## CERTIFICATE OF SERVICE

I, G. Alan Wooten, attorney of record for the plaintiff herein, state that I have deposited in the United States Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Russell C. Atchley
M. Scott Jackson
Max R. Deitchler
John G. Trice
Kutak Rock, LLP
234 E. Millsap, Suite 200
Fayetteville, AR  72703-4099

Mark A. Moll
Jones, Jackson & Moll, PLC
P. O. Box 2023
Fort Smith, AR  72902-2023

Barry D. Neal
Attorney at Law
423 Rogers Avenue, Suite 101
Fort Smith, AR  72901

on this 3rd day of October, 2014.

G. Alan Wooten